IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DAAIYAH MANNING,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 12 C 464 |
| **JOHN SWEITZER,** Park Forest Police Detective; **MICHAEL BAUGH**, Park Forest Police Detective Corporal; **PETER GREEN**, Park Forest Police Detective Commander; **THOMAS FLEMING**, former Park Forest Chief of Police; and the **VILLAGE OF PARK FOREST** | ) ) ) ) ) ) ) |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

On Jan. 20, 2012, pro se Plaintiff Daaiyah Manning ("Manning") filed this 12-count complaint against various Park Forest police officers and the Village of Park Forest following her arrest pursuant to an Arizona warrant. Named in the complaint are Detective John Sweitzer, Detective Corporal Michael Baugh, Detective Commander Peter Green, and former Police Chief Thomas Fleming. Manning alleges: (1) unreasonable search and seizure of her vehicle; (2) denial of the right to counsel; (3) cruel and unusual punishment; (4) a conspiracy under 42 U.S.C. § 1985; (5) failure to train; (6) unlawful detention, and several state law claims. Defendants have moved to dismiss the complaint in its entirety for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

Counts I and II may go forward, along with Manning's indemnification claim against the Village of Park Forest. The remainder of the complaint is dismissed.

I.

As a preliminary point, the parties dispute what facts I should consider in ruling on this Fed. R. Civ. P. 12(b)(6) motion to dismiss. Manning has attached to her complaint the police reports from her arrest, as well as a copy of an email sent by her daughter to police while she was being held at the Park Forest Police Department. Defendants argue that the police reports should be considered part of the pleadings pursuant to Fed. R. Civ. P. 10(c). While this is true, it does not mean that Manning vouched for all the facts in the police report. *Guzell v. Hiller*, 223 F.3d 518, 519 (7th Cir. 2000). Rather, "the plaintiff's purpose in attaching an exhibit to his complaint determines what assertions if any in the exhibit are facts that the plaintiff has incorporated into the complaint." *Id; see Gale v. Hyde Park Bank*, 384 F.3d 451, 452 (7th Cir. 2004) ("the plaintiff may tell the court what his adversary has said without throwing in the towel.").

Plaintiff's complaint adopts some of the facts in the police reports, but it is clear that she did not intend to adopt the reports in their entirety. For example, she contends that she did not waive her right to counsel while being interviewed by

2

police, while police reports indicate that she did. Given that Plaintiff has not adopted the reports as true, I will not consider them to be true in all respects. I will, however, consider the warrant for Manning's arrest attached to Defendants' motion to dismiss, given that it is referred to in her complaint and is central to her claim. *188 LLC v. Trinity Indust., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal citations omitted).

The following facts are taken from Manning's complaint and the warrant and considered in the light most favorable to the Plaintiff. Manning was indicted in Maricopa County, Ariz., for conspiracy to commit custodial interference, and on July 16, 2010, a fugitive felony warrant for her arrest was issued. Manning was accused of interfering in a custody dispute involving her grandson. Because Manning was a resident of Park Forest, Arizona police sought the assistance of Park Forest police in executing the warrant. Detective Sweitzer was assigned the case, and on July 29, 2010, Detective Sweitzer arrested Manning in Chicago.

According to the police reports, Detective Sweitzer arrested Manning after having received a tip from an apartment manager in Chicago. The apartment manager reported that Manning came to his office to complete a rental application and was accompanied by a small boy. Suspicious of her demeanor, the apartment manager looked her up on-line and realized she was wanted for custodial

3

interference.[1]  Manning was scheduled to return to the apartment later that day to pick up keys, so Detective Sweitzer set up surveillance and arrested her as she was walking to the building.

Plaintiff alleges that she was handcuffed, put in the back of a squad car, and not shown a copy of the warrant for her arrest.  Detective Sweitzer proceeded to search Manning's vehicle, which was parked nearby.  Manning's complaint points to a portion of the police reports indicating Detective Sweitzer did an inventory search of the vehicle before it was towed.  (Dkt. No. 1, Ex. A, at 5.)

After searching the vehicle, Detective Sweitzer brought Manning back to the Park Forest Police Department, where she was detained in a small holding cell.  Manning alleges that when they arrived at the police station, she requested a phone call, and to speak with an attorney, but Detective Sweitzer refused.  Other officers, acting at Detective Sweitzer's direction, later refused to let her call to check on the well-being of her minor child.

The next day, on July 30, 2010, Manning's daughter, Tauheedah Najee-Ullah Bey, emailed police and told them their conduct in arresting and detaining Manning was illegal. Defendant Thomas Fleming, then chief of the Park Forest police, responded by saying "Good luck on this matter."

---

[1] Although Manning disputes some of the events described in the police reports, she appears to accept the basic facts as to how her arrest occurred, and references them in her response.

4

Then, on July 31, 2010, Detective Sweitzer and Detective Corporal Baugh questioned Manning without the benefit of counsel. Manning contends she repeatedly requested counsel, while the police reports indicate that she knowingly waived her right to counsel. At some point, Manning's son hired her a lawyer.

On July 31, 2010, Manning's grandson was brought to the Park Forest police station by her attorney. On Aug. 2, 2010, Manning was transferred to the custody of the Cook County Sheriff's Department. Manning alleges that during the time she was held at the Park Forest Police Department, she had no access to bathing facilities, bedding, clean clothing, or her prescribed medication. Her glasses were removed from her possession when she arrived at the police station.

Manning was not charged with any crimes in the state of Illinois, and was eventually extradited to Arizona on the custodial interference warrant.

II.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Although a complaint's factual allegations need not be detailed, they must provide more than "labels, conclusions, or formulaic recitations of the

elements of a cause of action, and allege enough to raise a right to relief above the speculative level." *Ruiz v. Kinsella,* 770 F. Supp. 2d 936, 941–42 (N.D. Ill. 2011) (citing *Twombly,* 550 U.S. at 555). In ruling on such a motion, the question is whether the facts, accepted as true, "present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). I will address each count in turn.

### III.

**A. Count I: Search of Manning's Vehicle**

Count I of Manning's complaint, brought under 42 U.S.C. § 1983, alleges an unlawful search of her vehicle. Defendants contend that Count I must be dismissed because the search of the vehicle was either a lawful search pursuant to an arrest or a lawful inventory search.

First, it is important to clarify the nature of Manning's arrest. Generally, an arrest warrant issued in one state may not be lawfully executed in another. *Street v. Cherba*, 662 F.2d 1037, 1039 (4th Cir. 1981). However, police may conduct a warrantless arrest of a fugitive from another jurisdiction as long as the arresting officer has probable cause and the arrest was lawfully executed in the jurisdiction where it was made. *United States v. Miles*, 413 F.2d 34, 40 (3rd Cir. 1969). Here, Detective Sweitzer's knowledge of the Arizona warrant gave him probable cause to arrest Manning, and under Illinois law he was

authorized to do so anywhere in the state, even outside his jurisdiction of Park Forest. *See* 725 ILCS 225/14 (providing that any person may lawfully arrest a person who is charged with a felony offense in another state). Manning's arrest, then, was lawful.

Defendants, however, do not cite the controlling law as to a search of a vehicle incident to a lawful arrest until their reply brief. In *Arizona v. Gant*, 556 U.S. 332, 343–44 (2009), the U.S. Supreme Court held that a vehicle search incident to a lawful arrest may be conducted only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search, or when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. Defendants do not argue that the first exception applies. Rather, they argue that when Manning was arrested, her grandson was not with her. It was reasonable to assume, given the nature of the charges against her, that evidence of the child's whereabouts, or perhaps the boy himself, could be found in the vehicle. This argument, however, was not raised until the reply brief, and therefore is waived. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012).

Additionally, Defendants argue that this was a valid inventory search, noting that the police report itself, which Manning cites in her complaint, indicates that Detective Sweitzer

7

searched the vehicle as part of an inventory search prior to it being towed. An inventory search is a well-recognized exception to the warrant requirement. *United States v. Cartwright*, 630 F.3d 610, 613-14 (7th Cir. 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976)). An inventory search is lawful if: (1) the individual whose vehicle is to be searched was lawfully arrested; and (2) the search is conducted as part of a routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *Id.* at 614. The decision to impound the vehicle is analyzed separately from the decision to inventory the vehicle. *Id.*

The mere fact that the police reports refer to the search as an inventory search is not enough to establish the applicability of this exception. At this stage of the case, Defendants have not articulated their rationale for impounding the vehicle, nor have they shown that the inventory search was conducted in good faith according to established department procedures. In short, it is premature to evaluate the applicability of this exception to the warrant requirement. Defendants' motion to dismiss is denied as to Count I.

**B. Count II: Denial of Right to Counsel**

In Count II, Manning contends that she was denied her right to counsel under the Sixth and Fourteenth Amendments when the defendant officers refused to let her consult with an attorney.

8

In order to determine whether a violation of an individual's Sixth Amendment right to counsel has occurred, courts must consider: (1) whether the right to counsel had attached at the time of the statement or proceeding at issue; (2) if so, whether the accused executed a valid waiver of her right to counsel; and (3) absent a valid waiver, whether the police conduct violated the accused's right to counsel. *Walden v. City of Chicago*, 391 F. Supp. 2d 660, 677 (N.D. Ill. 2005) (citing *United States v. Spruill*, 296 F.3d 580, 585 (7th Cir. 2002)).

Defendants incorrectly argue that Plaintiff's claim should be analyzed under the rubric of the Fifth Amendment right to consult with an attorney during a custodial interrogation. Here, Manning was indicted in Arizona prior to her arrest in Illinois. Her Sixth Amendment right to counsel at critical stages of the proceedings attached at that point. *Swanigan v. Trotter*, 645 F. Supp. 2d 656, 683 (N. D. Ill. 2009) (citing *Watson v. Hulick*, 481 F.3d 537, 543 (7th Cir. 2007)). An interrogation after indictment is considered a "critical stage" of the proceedings. *Spruill*, 296 F.3d at 585. In their reply, Defendants argue the questioning in Illinois was not about the Arizona custodial interference charge, but rather about a charge of aiding and abetting child abduction that Park Forest police planned to bring against Manning as they attempted to locate the child. Defendants argue that because the Sixth Amendment right is

offense-specific, Manning had no Sixth Amendment right to counsel when she was questioned for this offense, with which she was never charged. Defendants' argument, however, is raised for the first time in their reply and underdeveloped, so I will not dismiss Count II on this basis.

Thus, the key questions are whether Manning waived her right to counsel, and whether, absent a valid waiver, police violated her right to counsel. These questions cannot be answered at this stage of the case. Although Defendants rely on statements in the police reports indicating that Manning waived her right to counsel, she denies waiving her rights, and this is not an issue that can be resolved on a motion to dismiss. As such, Defendants' motion to dismiss is denied as to Count II.

**C. Count III: Cruel and Unusual Punishment**

In Count III, Manning contends that she was subjected to cruel and unusual punishment when she was detained in a small holding cell at the Park Forest police station for five days. She brings her claim under the Eighth and Fourteenth Amendments. As a pretrial detainee, the Eighth Amendment did not apply to Manning, but she had equivalent rights under the due process clause. *Smentek v. Dart*, --- F.3d ---, 2012 WL 2305229, at *1 (7th Cir. 2012). Regardless, the standard is the same. *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007). Manning must show that she was incarcerated under conditions that posed a

10

substantial risk of serious harm, and that the Defendants were deliberately indifferent to that risk. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) (internal citations omitted).

Defendants argue that even taking the allegations of Manning's complaint as true, her complaints are not severe enough to add up to a constitutional violation. It is true that some of Manning's complaints are relatively minor, for example that she was confined in a small cell, forced to lie on hard surfaces, and denied a change of clothes. *See Tesch v. Cty. of Green Lake*, 157 F.3d 465, 476–77 (7th Cir. 1998) (noting that short-term impositions that are part of the general discomfort of being jailed do not rise to the level of constitutional violations).

Manning alleges a more serious complaint, however, that she was denied needed prescribed medication for an unnamed mental ailment. In her response, Manning elaborates that she was denied exercise, which aggravated her sacroidosis, a disease that causes inflammation of the organs.[2] She adds that her daughter contacted the police after her arrest, "notifying them of her need for medical attention and was assured the station stocked the medication needed, but had no knowledge of her prescriptions. Consequently, Plaintiff was forced to avoid the station's medication for fear of overmedication or a harmful interaction."

---

[2] In ruling on this motion, I may consider statements in Plaintiff's response that supplement the facts in her complaint. *Hentosh v. Herman M. Finch Univ.*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999).

Pl.'s Resp. at 8. This passage is confusing, but appears to indicate that Plaintiff was offered medication, but declined to accept it. Based on Manning's complaint in conjunction with her response, I cannot find that Manning has stated a claim that she was subjected to inhumane conditions or that police were deliberately indifferent to a serious medical need. Consequently, Defendants' motion to dismiss is granted as to Count III.

**D. Count IV: Civil Rights Conspiracy**

In Count IV, Manning brings a civil conspiracy claim against all the Defendants under 42 U.S.C. § 1985. She alleges they "together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit the unconstitutional overt acts set forth in the facts . . . ." Pl.'s Compl. ¶ 49.

In her response, Manning clarifies that she is bringing this claim under 42 U.S.C. § 1985(3). Her wholly conclusory allegations, however, fail to state a claim that the Defendants participated in a racially motivated conspiracy to violate her federally protected rights, so her claim must be dismissed. *See Winchester v. Marketti*, No. 11 C 9224, 2012 WL 2076375, at *5 (N.D. Ill. June 8, 2012) (dismissing § 1983 conspiracy claim where it was based on a "vague and conclusory" pleading).

**E. Count V: Failure to Train**

In Count V, Manning brings a claim against the Village of Park Forest for failure to properly train and supervise its officers. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for the purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). In order to establish such a claim, a plaintiff must show that the failure to train amounted to deliberate indifference to the rights of citizens with whom the untrained employees come into contact. *Id.* The U.S. Supreme Court has described this as a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Id.* at 1360 (internal citations omitted).

To demonstrate deliberate indifference, a plaintiff typically must prove a pattern of similar constitutional violations by untrained municipal employees. *Id.* Because Manning does not allege any other incidents of wrongdoing by defendants, she is essentially bringing a claim for "single incident" liability. While the U.S. Supreme Court has not entirely foreclosed the possibility of such claims, a plaintiff pressing such a theory must show that the unconstitutional

13

consequences of the failure to train were patently obvious. *Id.* at 1361.

Regardless, Manning's claim lacks any factual specificity, and as such fails to satisfy the pleading standards of *Twombly* and *Iqbal*. Recently, in dismissing a failure-to-train claim brought post-*Connick*, Judge Zagel observed that while the *Connick* opinion does not address pleading standards, it does suggest that such claims, because of their complexity and difficulty of proof, require a greater degree of specificity. *Winchester*, 2012 WL 2076375, at *4. Whether judged under this standard or the more liberal standard typically required, Manning has failed to allege a plausible claim for failure-to-train, and as such Count V is dismissed.

**F. Count VI: Unlawful Detention**

In Count VI, Manning brings a state law claim for unlawful detention. Her unlawful detention claim contends that her rights were violated when police failed to take her before a magistrate or surrender her into the custody of the Cook County Sheriff's Office within 48 hours.

As Defendants argue, however, all of Manning's state law claims in Counts VI through XI are time-barred. Under Illinois' Tort Immunity Act, claims against local governments and their employees are subject to a one-year statute of limitations. 745 ILCS 10/8-101. This applies even when the state law claims are

14

joined with claims brought under § 1983. *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Manning filed her complaint on Jan. 20, 2012, more than a year after these claims accrued. As such, all of Manning's state-law claims are dismissed as untimely. Manning's request for indemnification from Park Forest under 745 ILCS 10/9-102 in Count XII may stand however, pending the resolution of the case.

As Defendants recognize, Manning's claim for unlawful detention could be construed as having been brought under the Fourteenth Amendment rather than as a state-law claim. *See Sivard*, 17 F.3d at 189. Defendants argue, however, that Manning's claim is not viable in light of *Sivard*. In that case, an arrestee was held for 17 days in an Indiana jail pending extradition to Massachusetts, where he had been indicted. *Id.* at 188. Like Manning, the arrestee in *Sivard* relied on *Gerstein v. Pugh*, 420 U.S. 103 (1975), under which arrestees are entitled to a prompt judicial determination of probable cause. *Id.* at 189. Citing *Michigan v. Doran*, 439 U.S. 282 (1978), the Seventh Circuit noted that there was serious doubt as to the applicability of *Gerstein* to an indicted fugitive awaiting extradition. *Id.* at 191. Given this uncertain state of the law, the Seventh Circuit found that the arrestee could not show that his clearly established constitutional rights had been violated, so the defendant officers were entitled to qualified immunity.

15

*Id.* at 191.  The same is true here.  Manning cannot show that the Park Forest officers violated any clearly established constitutional right by detaining her for five days pending extradition to Arizona.  Consequently, whether as a state law or federal claim, Count VI is dismissed.

IV.

For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 25) is granted in part and denied in part.  Counts I and II may go forward, along with Manning's indemnification claim against the Village of Park Forest.  The remainder of the complaint is dismissed.

                                      **ENTER ORDER:**

                                      _____

                                      **Elaine E. Bucklo**
                                      United States District Judge

Dated: July 2, 2012