# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAAIYAH MANNING, | )<br>) |
| Plaintiff, | ) Civil Action No. 12 CV 464<br>) |
| v. | ) Hon. Charles R. Norgle<br>) |
| JOHN SWEITZER, Park Forest Police Detective, et al., | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant John Sweitzer ("Sweitzer"), Park Forest Police Detective, Michael Baugh ("Baugh"), Park Forest Police Detective Corporal, Peter Green ("Green"), Park Forest Police Detective Commander, Thomas Fleming ("Fleming"), former Park Forest Police Department Chief of Police, and the Village of Park Forest's (collectively "Defendants") motion for summary judgment on Count I of pro se Plaintiff Daaiyah Manning's Amended Complaint—the only remaining claim in this lawsuit—alleging unreasonable search and seizure under 42 U.S.C. § 1983 in violation of the Fourth Amendment. For the following reasons, summary judgment is granted in favor of Defendants.

## I. BACKGROUND

### A. Local Rule 56.1

The Court has broad discretion "to require strict compliance with its local rules governing summary judgment." Modrowski v. Pigatto, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal quotation marks and citation omitted). Pursuant to Local Rule 56.1, a litigant opposing a motion for summary judgment must serve and file the following:

> (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e);
> (2) a supporting memorandum of law; and (3) a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . .

N.D. Ill. LR 56.1(b). These rules are designed to conserve judicial time and resources. See Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 527 (7th Cir. 2000) ("These rules assist the court by organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence." (internal quotation marks and citation omitted)). Additionally, "Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion." Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) (citing N.D. Ill. LR 56.1.(b)(3)(C)). It is well established that pro se litigants are required to comply with procedural rules. See, e.g., Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)).

Defendants filed their motion for summary judgment on January 17, 2014, which included Local Rule 56.2 notice to Manning, proceeding pro se, of the consequences of failing to comply fully with the requirements of this rule. Nevertheless, Manning submits a response to Defendants' Local Rule 56.1(a)(3) Statement of Material Facts without an accompanying memorandum of law, or any evidentiary support in opposition. Although Manning admits the majority of Defendants' statement of material facts as true, she fails to comply with Local Rule 56.1 with regard to the facts she asserts are genuinely disputed.

For example, Manning denies several of Defendants' statement of material facts without citation to any evidence to justify her opposition. See Resp. to Defs. Mot. for Summ. J. ¶ 35, 55-59, 62-65. "An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) (internal quotation marks and citation omitted). In addition, Manning simply fails to answer many of Defendants' statement of material facts; instead, she claims, *inter alia*, that she "can neither admit or deny" the statements, and otherwise concludes that Defendants' statement of material facts are immaterial or could be disputed. See, e.g., Resp. to Defs. Mot. for Summ. J. ¶¶ 18-20. Further, Manning's responses are improper to the extent that they include additional facts. See Cichon v. Exelon Generation Co., 401 F.3d 803, 809 (7th Cir. 2005) ("Local Rule 56.1 *requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require the denial of summary judgment.'" (quoting N.D. Ill. LR 56.1(b)(3)(C) (additional citations omitted)). All material facts submitted by Defendants which are not properly contested or controverted by Manning are deemed admitted. See Menasha Corp. v. News Am. Mktg. In-Store, Inc., 238 F.Supp.2d 1024, 1029 (N.D. Ill. 2003) ("[T]he Court will disregard all argumentative, conclusory, unsupported or otherwise non-conforming portions of Menasha's 'Statement of Material Facts under L.R. 56.1.'").

## B. Facts[1]

On April 21, 2010, following a custody hearing in the Superior Court of Arizona, Maricopa County, the court granted Raushanah Najeeullah ("Raushanah") and Emiliano Peraza ("Emiliano") joint custody of their five-year-old son, Peraza. The court designated Emiliano as the primary residential parent in Tampa, Florida. By the terms of the court order, Peraza was to remain in Raushanah's care until May 15, 2010 at which time he would fly to Florida to be with his father for three weeks. On May 14, 2010, Manning flew from Illinois to Arizona, at her daughter, Raushanah's request. The following day, Manning returned to Park Forest, Illinois with her grandson, Peraza.

On May 18, 2010, Emiliano sought and received an order in the Superior Court of Arizona, Maricopa County, granting him sole custody of Peraza. This order authorized Emiliano to enlist the services of local, state and federal law enforcement to locate Peraza and secure his safe return.

On May 25, 2010, Emiliano contacted the Park Forest Police Department because he knew that Manning was a resident of the Village of Park Forest, Illinois. The same day, Park Forest Police Officer Obremski went to Manning's residence, 432 Illinois Street, Park Forest, Illinois, to investigate the matter, at which time she denied having her grandson. On May 27, 2010, Sweitzer learned that Manning's grandson was listed in the National Crime Information Center ("NCIC"), an electronic clearinghouse of crime data, which includes files on missing persons. The NCIC alert for the missing child listed Manning's home address as a possible

---

[1] The Court takes the undisputed facts from Defendants' Local Rule 56.1(a)(3) Statement of Material Facts and supporting evidentiary materials. Although the Court "need consider only the cited materials," it "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

location. The NCIC alert also listed a beige Nissan with Illinois registration H179099, registered to Manning.

On May 27, 2010, Sweitzer went to 432 Illinois Street to talk with Manning, but there was no answer at the door. Sweitzer spoke to Manning's neighbor, Edison Albury ("Albury"), who lived at 434 Illinois Street. Sweitzer showed Albury a picture of Peraza as depicted on the Missing and Exploited Children poster. Albury positively identified the child. Albury said that he remembered seeing Peraza in Manning's backyard on May 19, 2010 or May 20, 2010. The same day, Sweitzer called Manning's cell phone and spoke to a woman who identified herself as Manning. She denied having the missing child.

On June 2, 2010, Manning allowed Sweitzer and another Park Forest Officer to search her home. However, the search revealed no evidence of the missing child.

Meanwhile, Manning contacted Reverend Oscar Tillman ("Tillman"), a board member of the NAACP in Arizona, and told him that she had Peraza. Tillman notified the Chandler Police in Arizona. Manning was indicted for conspiracy to commit custodial interference in Maricopa County, Arizona. On July 16, 2010, a fugitive felony warrant for her arrest was issued. On July 21, 2010, Sweitzer received a fax copy of the arrest warrant, and called Manning, who agreed to meet with him. Manning, however, failed to appear. When Sweitzer called Manning's cell phone, Manning said that she knew her daughter had been arrested in Arizona and that she was not willing to surrender.

On July 29, 2010, Sweitzer learned that Manning had completed an application to rent an apartment at 7500 South Shore Drive, Chicago, Illinois. The apartment manager, James Bird ("Bird") informed Park Forest Police that Manning had been accompanied by a small boy, and had appeared nervous while she finished the application paperwork. Bird reported that he had

5

performed an internet search which turned up news that Manning was being sought for custodial interference, and that the missing child, as depicted on the "E-News Park Forest" post, was with her when she completed the apartment application forms.

Bird asked Manning to return to 7500 South Shore Drive on July 29, 2010 to pick up the keys to the apartment. On July 29, 2010, Sweitzer and other Park Forest Police officers were onsite at 7500 South Shore Drive to conduct surveillance, take Manning into custody pursuant to the arrest warrant, and recover the missing child. At approximately 3:45 p.m., Sweitzer observed Manning exit from a blue Mazda with Ohio plates (a rental car), and walk approximately a block towards 7500 South Shore Drive. Sweitzer arrested Manning as she was about to enter the apartment building. Sweitzer asked Manning where her missing grandson was, and she denied knowledge of his location.

After Manning was secured, Sweitzer took Manning's car keys, returned to the car, and searched it in an attempt to locate the missing child or evidence of his whereabouts—Manning had toys, shoes, and toiletries in the rental car. Sweitzer seized a computer and flash drives from Manning's rental car. Sweitzer also seized her cell phone. Manning alleges that Sweitzer accessed her cell phone address book and contacted various individuals contained therein.

Baugh, Green, and Fleming were not present at the scene of the arrest. Nor did they participate or supervise the searches and seizures.

Manning was transported to the Park Forest Police station where she was placed in a holding cell. On July 31, 2010, Manning's lawyer, Irwin Frazin, brought the missing child to the Park Forest Police station. On August 2, 2010, Manning was transferred to the custody of the Cook County Sheriff's Department. She was subsequently extradited to Arizona on the custodial interference warrant. On October 14, 2010, Manning pleaded guilty to conspiracy to commit

custodial interference. Manning was never charged or convicted of committing any crime in the State of Illinois.

**C. Procedural History**

On January 20, 2012, Manning filed a twelve-count complaint against Defendants, alleging unreasonable search and seizure of her vehicle, denial of the right to counsel, cruel and unusual punishment, conspiracy under 42 U.S.C. § 1985, failure to train, unlawful detention, as well as several pendent state-law claims. On July 2, 2012, the Court granted in part and denied in part Defendants' motion to dismiss Manning's complaint. Manning v. Sweitzer, 891 F. Supp.2d 961, 964 (N.D. Ill. 2012). The Court denied Defendants' motion to dismiss Manning's claims for unreasonable search and seizure, denial of the right to counsel, and indemnification. Id. The remainder of the complaint was dismissed. Id. On September 21, 2012, the Court granted Manning leave to file an amended complaint on or before October 19, 2012. Manning availed herself of this opportunity, and filed a three-count complaint, alleging § 1983 claims for unreasonable search and seizure in violation of the Fourth Amendment (Count I) and denial of her right to counsel in violation of the Sixth Amendment (Count II), and intentional infliction of emotional distress under Illinois state law (Count III). On June 26, 2013, the Court granted in part and denied in part Defendants' motion to dismiss Manning's amended complaint; Counts II and III were dismissed. Manning v. Sweitzer, No. 12 C 464, 2013 WL 3293544, at *3 (N.D. Ill. June, 26, 2013). Count I is the only remaining claim in this case. In her prayer for relief, Manning seeks, *inter alia*, damages, punitive damages, an injunction from further retaliation, and a declaration that Defendants' conduct and practices were unlawful. Defendants now move for summary judgment on Count I. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Ault v. Speicher, 634 F.3d 942, 945 (7th Cir. 2011). "A genuine dispute as to any material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Kvapil v. Chippewa County, Wis., 752 F.3d 708, 712 (7th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "In determining summary judgment motions, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" Id. (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Put differently, before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). "[I]n a § 1983 claim, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." Ault, 634 F.3d at 945 (internal quotation marks and citation omitted).

### B. Count I: Search and Seizure

Manning claims that Sweitzer violated the Fourth Amendment when he searched her rental car, and searched and seized her electronic devices without a warrant. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is reasonableness." Riley v. California, 134 S. Ct. 2473, 2482 (2014) (internal quotation marks and citation omitted). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Id. (citing Kentucky v. King, 131 S. Ct. 1849, 1856-1857 (2011)). A search incident to a lawful arrest is one such exception. Arizona v. Gant, 556 U.S. 332, 338 (2009) (citing Weeks v. United States, 232 U.S. 383, 392 (1914)). Under this exception, "an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'" Davis v. United States, 131 S. Ct. 2419, 2425 (2011) (quoting Gant, 556 U.S. at 343).

Here, Sweitzer arrested Manning pursuant to a fugitive felony warrant for custodial interference in the State of Arizona, Maricopa County, with nationwide extradition. "A custodial arrest exacts an obvious toll on an individual's liberty and privacy. . . . The arrestee is subject to a full search of her person and confiscation of her possessions." Atwater v. City of Lago Vista, 532 U.S. 318, 364 (2001) (O'Connor, J., dissenting) (citing United States v. Robinson, 414 U.S. 218 (1973)). Moreover, in executing the arrest warrant, Sweitzer had reason to believe that the rental car he searched would contain evidence relevant to the crime of arrest. Based upon his investigation of the matter, Sweitzer knew that the missing child, Peraza, had been seen with Manning when she completed the rental application for the 7500 South Shore Drive apartment, and Peraza had been seen in the backyard of her residence, 432 Illinois Street, Park Forest, Illinois. The missing child was not with Manning at the time of her arrest for custodial interference; therefore, there was a reasonable basis to believe that the rental car contained

relevant evidence of Peraza's whereabouts. Accordingly, Sweitzer's search of Manning's rental car incident to her arrest was reasonable under the Fourth Amendment.

However, with respect to the alleged search of Manning's electronic devices, including her cell phone, the Supreme Court has recently held that police officers must generally secure a warrant before searching digital data on a cell phone—even where, as here, electronic devices are seized incident to a lawful arrest. Riley, 134 S. Ct. at 2493. In declining to extend the search incident to arrest exception to digital data on cell phones, the Supreme Court found that the underlying concerns announced in Chimel v. California, 395 U.S. 752 (1969) for the search incident to arrest doctrine—officer safety and evidence preservation—simply do not apply to digital data. Riley, 134 S. Ct. at 2484-88. Additionally, the Supreme Court determined that searching digital data is quantitatively and qualitatively different from searching physical personal property—there are immense privacy concerns "far beyond those implicated by the search of a cigarette pack, a wallet, or a purse." Id. at 2488-89. The Supreme Court observed that modern cell phones are "in fact minicomputers that also happen to have the capacity to be used as a telephone." Id. at 2489.

This is not to say, however, that digital data contained on computers, flash drives, or cell phones is immune from search; other case-specific exceptions may justify a warrantless search of such digital data. See id. at 2493-94. For example, the exigent circumstances exception "applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Id. at 2494 (internal quotation marks and citation omitted). Such an emergency includes "fact-specific threats" such as "a child abductor who may have information about the child's location on [her] cell phone." Id. The exigent circumstances exception could have justified Sweitzer's search of Manning's

electronic devices, but Defendants fail to make an exigent circumstances argument. Instead, Defendants argue that Sweitzer's search of Manning's electronic devices was supported by probable cause; and, that Sweitzer is otherwise entitled to qualified immunity.

"Qualified immunity 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gibbs v. Lomas, 755 F.3d 529, 536 (7th Cir. 2014) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). In determining whether Sweitzer is entitled to qualified immunity, the Court applies a two-prong test: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." Id. (internal quotation marks and citation omitted). If either prong is answered in the negative, the defendant official is entitled to summary judgment. Id. The Court, in its discretion, may determine the order of the qualified immunity analysis. Id. (citing Pearson, 555 U.S. at 236).

In this instance, the Court begins its inquiry with the second prong. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." Pearson, 555 U.S. at 243-44 (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)). "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Id. (internal quotation marks and citations omitted). "To be clearly established at the time of the challenged conduct, the right's contours must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right,' and 'existing precedent must have placed the statutory or constitutional question beyond

11

debate.'" Rabin v. Flynn, 725 F.3d 628, 632 (7th Cir. 2013) (quoting Humphries v. Milwaukee Cnty., 702 F.3d 1003, 1006 (7th Cir. 2012)).

In July of 2010, the legal contours of the Fourth Amendment as it pertains to the search of cell phones or other electronic devices in general public use that are seized incident to arrest was yet unclear. Riley was decided on June 25, 2014—nearly four years after the events at issue took place. Indeed, there is only one decision in the Seventh Circuit addressing the search incident to arrest doctrine in the context of such technology, United States v. Flores-Lopez, 670 F.3d 803 (7th Cir. 2012). There, the Seventh Circuit held that the warrantless search of a cell phone for its phone number (and the seizure of that information) did not infringe the Fourth Amendment. Id. at 810. The Seventh Circuit opined:

> It's not even clear that we need a rule of law specific to cell phones or other computers. If police are entitled to open a pocket diary to copy the owner's address, they should be entitled to turn on a cell phone to learn its number. If allowed to leaf through a pocket address book, as they are, United States v. Rodriguez, 995 F.2d 776, 778 (7th Cir.1993), they should be entitled to read the address book in a cell phone.

Id. at 807. But even this decision post-dated Sweitzer's alleged search of Manning's cell phone and other electronic devices.

At the time of the alleged violation, the Seventh Circuit had held that based upon the need to preserve evidence, the search of a pager did not violate the Fourth Amendment because the activation of the pager and retrieval of its contents—telephone numbers—was incident to arrest. United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996). Sweitzer was entitled to rely on this case—despite technological advances—without facing damages liability for his actions. In July of 2010, it would not have been clear to a reasonable police officer that a warrantless search of cell phones or other electronic devices seized incident to arrest would generally violate the

Fourth Amendment. Because Manning's Fourth Amendment right was not clearly established, Sweitzer is entitled to qualified immunity on Manning's claim for monetary damages. Although Manning's amended complaint also seeks to "enjoin Defendants from further retaliating against Plaintiff" and asks the Court "[t]o declare the conduct and practices unlawful," Am. Compl. at 11-12, Manning fails to establish a well-founded fear of being subjected to an allegedly unlawful search and seizure of her cell phone or electronic devices again; thus, there is no live controversy between the parties under Article III of the Constitution to merit prospective relief. See O'Shea v. Littleton, 414 U.S. 488, 493-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."); see also Atkins v. City of Chi., 631 F.3d 823, 838 (7th Cir. 2011) (Hamilton, J., concurring) ("To obtain prospective relief, even someone who has experienced such treatment by mistake might well need to show that he has an objectively reasonable fear of being subjected to it again, which I expect would be difficult." (citing Los Angeles v. Lyons, 461 U.S. 95 (1983))).

Because Sweitzer's search of Manning's rental car was reasonable under the Fourth Amendment, and because Sweitzer is entitled to qualified immunity for searching Manning's electronic devices and seizing the digital data contained therein, summary judgment is appropriate. The Court, therefore, need not reach Defendants' remaining arguments.

Finally, to the extent that Manning seeks to impose liability on Sweitzer's supervisors, Baugh, Green, and Fleming, her claims are without merit. "[T]o be liable under § 1983, the individual defendant must have 'caused or participated in a constitutional deprivation.'" Pepper v. Vill. of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotation marks and citation omitted). Baugh, Green, and Fleming were not present when Manning was arrested, and had no

personal involvement in the alleged underlying searches and seizures incident to arrest. Accordingly, Baugh, Green, and Fleming are also entitled to summary judgment.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion is granted. Summary judgment is entered in favor of Defendants and against Manning on Count I.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 18, 2014